UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

**FILED**

01 JUN 15 AM 9: 44

RODERICK HARRIS,                    )

        Plaintiff,                  )

vs.                                 )   Civil Action No. CV-99-S-2276-S

WILLIAM HENDERSON, in his           )
official capacity as United         )
States Postmaster General,          )

        Defendant.                  )

U.S. DISTRICT COURT
N.D. OF ALABAMA

**ENTERED**

JUN 1 5 2001



## MEMORANDUM OPINION

Plaintiff alleges that his employment with the United States
Postal Service was terminated in retaliation for his act of filing
discrimination complaints with the Postal Service's Equal
Employment Opportunity Office, in violation of Title VII of the
Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*
The action presently is before the court on defendant's motion for
summary judgment (doc. no. 16).

Federal Rule of Civil Procedure 56(c) provides, in part, that
summary judgment not only is proper, but "shall be rendered
forthwith if the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to judgment as
a matter of law." Fed. R. Civ. P. 56(c). Thus, "the plain

language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)) (internal quotation marks and citations omitted); *see also United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (*en banc*).

With the foregoing standards in mind, the following facts either are not disputed or, if contested, are stated in a light most favorable to plaintiff, the non-moving party.

-2-

## SUMMARY OF FACTS

### A.   Plaintiff's Employment:   Conflict and Confrontation

Plaintiff, Roderick Harris, is an American citizen of African ancestry.  He was hired by the United States Postal Service on May 1, 1993, to work as a part-time, flexible, mail distribution/window clerk in the Eutaw, Alabama, post office.[1]  "Part-time, flexible" employees typically are paid an hourly wage and conform to a flexible schedule prescribed by supervisors.[2]  Plaintiff's duties included working at the service window and processing incoming and outgoing mail.[3]

The record reflects that plaintiff's relationship with his supervisors was often strained:  he received numerous reprimands and warnings regarding his performance of duties.  In response, plaintiff filed complaints of discrimination with the Postal Service's Equal Employment Opportunity office, or grievances with the American Postal Workers' Union.  Plaintiff's EEO complaints, union  grievances,  and  his  supervisors'  disciplinary  memos constitute the bulk of the evidence submitted in support of, and in opposition to, defendant's motion for summary judgment.   They

---

[1] Defendant's evidentiary submission (doc. no. 18), Exhibit 1 (Cook declaration), attachment 1.

[2] Plaintiff's evidentiary submission (doc. no. 20), Exhibit 31 (notice of removal).

[3] *Id.*

- 3 -

provide helpful background for understanding the events leading up

to plaintiff's termination, and are summarized below.

(1)   On September 14, 1994, plaintiff lodged a grievance with the
      postal workers' union, stating that he was wrongly denied a
      transfer to the Birmingham, Alabama post office.  Plaintiff
      asserted that April Williams, his supervisor at the time, gave
      him a "bad evaluation" which hampered his efforts to secure
      the transfer.[4]

(2)   Plaintiff was suspended for seven days on April 11, 1995, for
      being absent without leave from March 28 through April 2,
      1995.  According to Terry Sims, Postmaster of the Eutaw post
      office, plaintiff sustained an on-the-job injury in early
      1995, but his physician released him to return to work with no
      limitations on March 28, 1995.  However, plaintiff did not
      return to work until April 3, 1995, thus prompting the
      suspension.  In response, plaintiff filed an EEO complaint,
      alleging that the suspension was racially motivated.[5]

(3)   Plaintiff was suspended for a period of fourteen days by
      Postmaster Sims on May 15, 1995, for failing to follow Sims'
      instructions by leaving work early, and, leaving the building
      unsecured.[6]  Plaintiff filed an EEO complaint, alleging that
      the fourteen day suspension was issued without just cause and
      was racially motivated.[7]

(4)   Plaintiff filed another EEO complaint on June 20, 1995,
      relating to the denial of his 1994 request for transfer to the
      Birmingham post office (see paragraph (1) above).  He alleged
      that his transfer was denied due to April Williams' improper
      evaluation and a prior, unwarranted suspension.[8]   The

---

[4] *Id.*, Exhibit 8 (September 14, 1994 grievance).

[5] *Id.*, Exhibit 13 (7 day suspension notice) & Exhibit 14 (April 24, 1995 complaint).

[6] *Id.*, Exhibit 15 (14 day suspension notice).

[7] *Id.*, Exhibit 18 (June 27, 1995 complaint).

[8] The unwarranted suspension to which plaintiff refers occurred in August of 1994, when plaintiff received a seven day suspension for failing to properly secure a registered item, which resulted in a financial shortage to the post office.  The suspension was later reduced to a letter of warning after plaintiff

-4-

complaint further asserted that Williams' actions constituted sexual harassment.[9]

(5)  On March 25, 1996, plaintiff filed an EEO race discrimination complaint alleging that Postmaster Sims had scheduled a white transitional employee "to work the morning mail distribution instead of" plaintiff.[10]

(6)  Plaintiff was again suspended for a period of seven days on May 1, 1996.  In the notice of suspension, Postmaster Sims explained that plaintiff improperly processed postal forms and failed to follow the postmaster's instructions.[11]  Plaintiff responded to this suspension by filing an EEO complaint, asserting that Sims' actions were racially motivated.[12]

(7)  Plaintiff filed yet another EEO complaint on June 7, 1996, alleging that Postmaster Sims racially discriminated against him on the basis of race by filling a vacant position at the post office without posting a notice of vacancy.[13]

(8)  Plaintiff received yet another fourteen day suspension on July 29, 1996, for refusing to open a clerk window after being instructed to do so.  In addition, the notice states that plaintiff was absent without leave on June 25, 1996, and had failed to provide his supervisors with proper excuse documentation.[14]  Plaintiff filed another EEO complaint on September 9, 1996, alleging the suspension was the result of racial discrimination by Postmaster Sims and Wilith Cook.[15]

---

filed a grievance with the postal workers' union stating that he had not been properly trained in handling registered items. *Id.*, Exhibits 5-7.

[9] *Id.*, Exhibit 19 (June 30, 1995 complaint).

[10] *Id.*, Exhibit 20 (March 25, 1996 complaint).

[11] *Id.*, Exhibit 21 (7 day suspension notice).

[12] *Id.*, Exhibit 22 (June 7, 1996 complaint I).

[13] *Id.*, Exhibit 23 (June 7, 1996 complaint II).

[14] *Id.*, Exhibit 24 (14 day suspension notice).

[15] *Id.,* Exhibit 27 (September 9, 1996 complaint).  Wilith Cook had signed the July 29, 1996, disciplinary letter on behalf of Postmaster Sims because, at that time, Cook was the Officer-in-Charge of the Eutaw post office.  Defendant's evidentiary submission (doc. no. 18), Exhibit 1 (Cook declaration), ¶ 4.

## B. Plaintiff's Termination

On December 11, 1996, plaintiff and Wilith Cook, who had become postmaster of the Eutaw post office on August 31, 1996, engaged in a heated verbal exchange. In a letter advising plaintiff of his impending termination, Cook described the confrontation as follows:

On December 11, 1996, I observed you moving mail from place to place without processing it properly. I noticed you performing the time wasting practices and instructed you to work the mail.[16] Again I had to instruct you to work the mail and I stated to you, "I need the work done before 12 noon." You then replied, "Who are you? Why are you coming at me like that? I'm working." You then put the mail down and started walking in my direction while talking about why I was getting down on you. I then told you to stop talking, turn around, and continue to work. You failed to follow this instruction and continued to talk and walk in my direction. I then advised you I was giving you a direct order not to say another word and to get back to work. You paused and then proceeded to continue with your verbiage. You took two more steps in my direction. At this time, I told you to proceed to the time clock, punch out, and leave the premises. You stopped walking, but continued to talk. I again advised you that I was giving you a direct order to leave the premises. You then proceeded to the time clock and left for the day.[17]

Plaintiff filed a grievance with the postal workers' union on December 20, 1996, asserting that Cook's actions were in

---

[16] Cook described these "time wasting practices" as including: "moving the mail from place to place with no apparent rhyme or reason"; "adjusting his radio headset"; and, "just standing, staring at a mail piece." *Id.*, Exhibit 1 (Cook declaration), attachment 1 (request for discipline).

[17] *Id.*, attachment 2 (notice of removal).

-6-

retaliation for his prior EEO activity.[18]  Seven days later, Cook completed a form titled "request for discipline," in which he detailed the confrontation and requested that plaintiff's employment be terminated.[19]  Plaintiff was issued a notice of removal on January 31, 1997, advising him that his employment with the Postal Service would be terminated on March 2, 1997.[20] Plaintiff filed his last EEO complaint on April 1, 1997, alleging that his termination was in retaliation for his prior EEO activity.[21]

## DISCUSSION

When evaluating employment discrimination claims supported by circumstantial evidence, courts are guided by the analytical framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct 1817, 36 L.Ed.2d 668 (1973), and then elaborated in its progeny. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207

---

[18] Plaintiff's evidentiary submission (doc. no. 20), Exhibit 28 (December 20, 1996 grievance).

[19] Defendant's evidentiary submission (doc. no. 18), Exhibit 1 (Cook declaration), attachment 1 (request for discipline).

[20] *Id.*, attachment 2 (notice of removal).

[21] Plaintiff's evidentiary submission (doc. no. 20), Exhibit 34 (April 1, 1997 complaint).

(1981). Under that now familiar framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; see also *Burdine*, 450 U.S. at 253-54 & n.6, 101 S.Ct. at 1093-94 & n.6. "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094.

"The effect of the presumption of discrimination created by establishment of the prima facie case is to shift to the employer the burden of producing legitimate, non-discriminatory reasons for the challenged employment action." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094), cert. denied sub nom. *Combs v. Meadowcraft Co.*, 522 U.S. 685, 118 S.Ct. 685, 139 L.Ed.2d 632 (1998). If a defendant carries its burden of producing "admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus," *Burdine*, 450 U.S at 257, 101 S.Ct. at 1096, then the presumption of discrimination created by the prima facie case "drops from the case," and "the

-8-

factual inquiry proceeds to a new level of specificity." *Id.* at 255 & n.10, 101 S.Ct. at 1094-95 & n.10.

In the final step of the analytical process, the plaintiff must "come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs*, 106 F.3d at 1528 (citing *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095; *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825). If a plaintiff does so, then he or she "is entitled to survive summary judgment." *Combs*, 106 F.3d at 1529.

## A.  The Prima Facie Case

Plaintiff must prove three facts to establish a prima facie case of retaliation: (1) he engaged in statutorily protected expression or activity; (2) he suffered an adverse employment action; and (3) there was a causal linkage between the protected conduct and the adverse action. *See, e.g., Gupta v. Florida Board of Regents*, 212 F.3d 571, 587 (11th Cir. 2000); *Farley v. Nationwide Mutual Insurance Company*, 197 F.3d 1322, 1336 (11th Cir. 1999); *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1455 (11th Cir. 1998); *Meeks v. Computer Associates International*, 15 F.3d

1013, 1021 (11th Cir. 1994); *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993).

An employee engages in activity protected by Title VII if he either "opposed any practice made an unlawful employment practice" by Title VII, or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). The participation clause "protects proceedings and activities which occur in conjunction with or after the filing of a formal charge with the EEOC...." *Equal Employment Opportunity Commission v. Total System Services, Inc.*, 221 F. 3d 1171, 1174 (11th Cir. 2000).

Plaintiff clearly satisfies the first two elements of a prima facie case. He filed several complaints with the Postal Service EEO office. *See, e.g., Taylor v. Runyon*, 175 F.3d 861, 870 (11th Cir. 1999) (finding that a postal employee's filing of complaints with the Postal Service EEO office constituted protected activity). In addition, it is undisputed that plaintiff suffered an adverse employment action when his employment was terminated. Plaintiff thus must demonstrate only a causal relationship between his protected activity and subsequent termination.[22]

---

[22] When a plaintiff fails to present any evidence of a causal connection between protected activity and a subsequent adverse employment action, the court must dismiss the claim. *See, e.g.*, Bailey v. USX Corp., 850 F.2d 1506, 1508

The causation requirement is not onerous: "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Meeks*, 15 F.3d at 1021 (quoting *EEOC v. Reichhold Chemical, Inc.*, 988 F.2d 1564, 1571-72 (11th Cir. 1993)).

A causal relationship may be inferred from circumstantial evidence.[23] *See, e.g., Goldsmith,* 996 F.2d at 1163 ("At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action. ... The defendant's awareness ... may be established by circumstantial evidence.").

For example, a causal linkage has been inferred when only a short period of time elapsed between protected activity and an adverse employment action. *See Bass v. Board of County Commissioners*, 242 F.3d 996, 1015 (11th Cir. 2001) ("Close temporal proximity between the protected activity and the adverse action may

_____

(11th Cir. 1988); McCollum v. Bolger, 794 F.2d 602, 610 (11th Cir. 1986); Hamm v. Members of Board of Regents of State of Florida, 708 F.2d 647, 654 (11th Cir. 1983).

[23] "Evidence of some collateral fact, from which the existence or non-existence of some fact in question may be inferred as a probable consequence, is termed circumstantial evidence." William P. Richardson, *The Law of Evidence* § 111, at 68 (3d ed. 1928).

"Some circumstantial evidence is very strong, as when you find a trout in the milk." Henry David Thoreau, Journal, 11 Nov. 1850, in 2 *Journal of Henry D. Thoreau* 94 (Bradford Torrey & Francis H. Allen eds., 1962).

be sufficient to show that the two were not wholly unrelated.")
(citing *Gupta*, 212 F.3d at 590 ("For purposes of a prima facie
case, 'close temporal proximity' may be sufficient to show that the
protected activity and the adverse action were not 'wholly
unrelated.'") (quoting *Farley*, 197 F.3d at 1337); *see also Holland
v. Jefferson National Life Insurance Co.*, 883 F.2d 1307, 1314-15
(7th Cir. 1989) (same).

When a plaintiff attempts to satisfy the causal relationship
requirement on the basis of a close temporal proximity between
protected activity and subsequent adverse action, however, the
Eleventh Circuit requires that the interval between events be
brief.

> Assuming, as the district court did, that the
> transfer to the jail was an adverse employment action,
> Appellant's transfer and termination occurred 15 and 21
> months, respectively, after Appellant filed her grievance
> against her supervisor. Far from demonstrating a pattern
> of retaliatory activity, these two employment actions
> were isolated events that had no temporal relationship to
> Appellant's protected activity. The more than 15-month
> period that elapsed between Appellant's grievance and the
> alleged adverse employment actions belies her assertion
> that the former caused the latter. *See, e.g., O'Connor
> v. Chicago Transit Auth.*, 985 F.2d 1362, 1370 (7th Cir.
> 1993) (9-month gap between protected activity and adverse
> employment action precluded reasonable inference of
> causation); *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir.
> 1998) (13-month delay between protected activity and
> termination too long for causation to be established);
> *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395

(10th Cir. 1997) (4-month lag between protected activity
and termination not sufficient to justify an inference of
causation); *cf. Donnellon v. Fruehauf Corp.*, 794 F.2d
598, 601 (11th Cir. 1986) (averring that fact plaintiff
was discharged only one month after filing complaint with
EEOC "belies any assertion by the defendant that the
plaintiff failed to prove causation").

*Maniccia v. Brown*, 171 F.3d 1364, 1369-70 (11th Cir. 1999)

(footnote omitted). The Eleventh Circuit's approving citation of

the Tenth Circuit's opinion in *Conner v. Schnuck Markets, supra*,

when read in conjunction with the other decisions relied upon by

the *Maniccia* court, appears to indicate that the expiration of four

months or more between a plaintiff's protected activity and

subsequent adverse employment action negates an inference of

causation premised solely on the temporal sequence of events. *See*

*also Stavridis v. Energy Absorption Systems, Inc.*, No. 98-6828

(11th Cir. Nov. 16, 1999) (unpublished opinion, at 6) (holding that

"any slight inference of retaliation that may arise as a result of

... temporal proximity [*i.e.*, the plaintiff was terminated eleven

months after filing his first EEOC charge, and five months after

filing his second EEOC charge] is outweighed by the overwhelming

evidence of [plaintiff's poor job performance] ...."). *But see*

*Gupta*, 212 F.3d at 590 (apparently finding a twelve to eighteen

month temporal sequence of events sufficient to establish a causal

linkage).[24]

In the present case, plaintiff has established that the decisionmaker was generally aware of his prior complaints of discrimination, and, that the adverse employment action took place within four months of protected activity. According to plaintiff, he met with Wilith Cook in August of 1996, and informed him of his prior EEO activity.[25] Plaintiff also told Cook that he "planned to file an EEO complaint about the July 29, 1996 suspension."[26] Plaintiff in fact filed a complaint with the Postal Service EEO office on September 9, 1996.[27] (Plaintiff additionally filed a grievance with the postal workers' union on December 20, 1996, stating that it was "possible" that Cook's actions were in retaliation for his prior EEO activity.[28]) Cook completed a "request for discipline" form on December 27, 1996, recommending

---

[24] See Gupta, 212 F.3d at 590, where the court observed:

Stronge announced at a faculty meeting in 1996 that Gupta had filed a complaint against the University. Moreover, the two adverse employment actions arguably occurred within close temporal proximity to the respective decision-makers learning of Gupta's protected activities. Although Gupta did not file a complaint with the EEOC until the spring of 1996 and did not file suit until June 25, 1996, she complained about the alleged sexual harassment to other faculty members in late 1994 and to Dean White in January 1995. Gupta was denied a merit raise in the spring of 1996 and was denied a tenure extension in early 1997.

[25] Plaintiff's evidentiary submission (doc. no. 20), (declaration of plaintiff), ¶ 29.

[26] Id.

[27] Id., Exhibit 27 (September 9, 1996 complaint).

[28] Id., Exhibit 28 (December 20, 1996 grievance).

-14-

that plaintiff's employment be terminated. The adverse employment action thus was initiated within four months of plaintiff's September 9, 1996 EEO complaint, and he accordingly has established a prima facie case for retaliation.

## B. Defendant's Rebuttal of the Prima Facie Case

Defendant asserts that plaintiff's dismissal was warranted, based upon his conduct towards Postmaster Cook on December 11, 1996.[29] In addition, when considering whether to terminate plaintiff, Cook also took into account plaintiff's previous suspensions, which stemmed from his history of repeatedly failing to follow supervisors' instructions, plaintiff's improper processing of mail, and his problems with absenteeism.[30] That is sufficient to rebut the presumption of a discriminatory, retaliatory discharge.

---

[29] *See* defendant's brief in support of summary judgment (doc. no. 19), stating that:

> Plaintiff's removal was warranted by his conduct toward the Postmaster. Section 666.51 of the Employee and Labor Relations Manual states, in part, that "employees **must** obey the instructions of their supervisors..." (emphasis added). ... Plaintiff, who has a history of failing to follow instructions, continually disobeyed the Postmaster's instructions to work the mail. Instead of complying with clear instructions to work the mail, Plaintiff continually questioned the Postmaster and failed to perform his duties as instructed. ...

*Id.* at 12 (emphasis in original) (citations omitted). *See also* defendant's reply to plaintiff's brief in opposition to summary judgment, at 3-4.

[30] Defendant's evidentiary submission (doc. no. 18), Exhibit 1 (Cook declaration), attachment 2 (notice of removal).

The burden thus reverts to plaintiff to produce evidence indicating that defendant's stated reasons for the contested employment action are not believable.

## C.   Plaintiff's Proof of Pretext

Plaintiff has produced no evidence, beyond that of the timing of his termination and the defendant's general awareness of his prior protected activity, to cast doubt on defendant's proffered reasons for his termination. Instead, plaintiff asserts that "a plaintiff is not required to introduce evidence beyond the prima facie case to establish pretext of a movant's articulated reason for the adverse employment action...."[31] As authority for that assertion, plaintiff cites *Hairston v. Gainesville Sun Publishing Company*, 9 F.3d 913 (11th Cir. 1993), a case in which the Eleventh Circuit said that,

> to establish pretext, the plaintiff is not required to introduce evidence beyond that already offered to establish the prima facie case. ... Evidence already introduced to establish the prima facie case may be considered, and "[i]ndeed, there may be some cases where the plaintiff's initial evidence, combined with effective cross examination of the defendant, will suffice to discredit the defendant's explanation" and establish pretext. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 n.10, 101 S.Ct. 1089, 1095 n.10, 67 L.Ed.2d 207 (1981).

---

[31] Plaintiff's brief in opposition to summary judgment (doc. no. 21), at 8).

*Id.* at 921 (emphasis supplied). At first blush, the *Hairston* holding appears at odds with (among other cases) the Eleventh Circuit's decision in *Brown v. American Honda Motor Co., Inc.*, 939 F.2d 946 (11th Cir. 1991), where the court held that, "to withstand a defendant's motion for summary judgment, a plaintiff ha[s] to do more than establish a prima facie case and deny the credibility of defendant's witnesses." *Id.* at 950.

The Eleventh Circuit attempted to reconcile the seemingly inconsistent holdings of *Hairston* and *Brown* in *Howard v. BP Oil Company, Inc.*, 32 F.3d 520 (11th Cir. 1994), saying:

> The difference between *Hairston* and *Brown* is the difference between evidence sufficient to overcome summary judgment and that which is insufficient. In *Brown*, the court upheld summary judgment, holding that Honda's evidence supporting its articulated reason was extremely compelling and the plaintiff failed to produce sufficient evidence to allow a reasonable jury to find defendant's articulated reasons were false. We concluded, "[a]lthough the plaintiff has produced scattered pieces of circumstantial evidence, none of it, even taken as a whole, raises sufficient questions to undermine [defendant's] nondiscriminatory rationale." ... Beyond establishing his *prima facie* case, the *Brown* plaintiff merely denied the credibility of the defendant's witnesses. Accordingly, summary judgment was proper in *Brown* notwithstanding the finding that the plaintiff established a *prima facie* case.

*Id.* at 526. Even if one does not find that explanation particularly illuminating, the *Howard* court clearly held that *Brown*

-17-

"is still good law." *Id.* at 525.

This court recognizes there may be some cases in which a plaintiff's prima facie showing is so compelling that it, and it alone, is sufficient to cast doubt upon the credibility of the non-discriminatory reasons stated by an employer as an explanation for the contested employment action.  Even so, such cases are exceptional.  Stated somewhat differently,

> [t]his Court does not read *Hairston* to say that the establishment of a prima facie case automatically creates a disputed issue of fact as to whether the defendant's proffered reason is pretextual.  As a practical matter, this Court must review all the evidence ... and determine therefrom if there is a disputed issue of fact as to pretext.

*Fraizer v. Widnall*, No. 1:94-CV-988-JMF, 1995 WL 807169 at *7 n.6 (N.D. Ga. Dec. 8, 1995).[32]

The question presented here probably should be phrased as follows:  is the temporal proximity between plaintiff's protected activity and subsequent termination, viewed within the context of

---

[32] In another portion of the same opinion, the Northern District of Georgia observed:

> Although the Eleventh Circuit has recently held [in *Hairston*] that the evidence used by a Title VII plaintiff to establish the prima facie case may, standing alone, suffice to create a disputed issue of fact as to pretext, ... the plaintiff still bears the burden of establishing pretext by presenting some probative evidence thereof to avoid summary judgment.

*Fraizer v. Widnall*, No. 1:94-CV-988-JMF, 1995 WL 807169 at *6 (N.D. Ga. Dec. 8, 1995).

all other evidence presented, sufficient to demonstrate pretext? Thus phrased, the answer is found in an explication of some fundamental principles.

## 1. The ultimate question

To begin with, it must be remembered that the ultimate question in every employment discrimination case is not whether the plaintiff has established a prima facie case or demonstrated pretext, but whether "'the defendant intentionally discriminated against the plaintiff.'" *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1481-82, 75 L.Ed.2d 403 (1983) (quoting *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093). "Although intermediate evidentiary burdens shift back and forth under [the *McDonnell Douglas* analytical] framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all time with the plaintiff.'" *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000) (quoting *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1095).

## 2. The purposes served by proof of a prima facie case

The presentation of a prima facie case unquestionably "serves an important function": "it eliminates the most common

-19-

nondiscriminatory reasons for the plaintiff's [termination]." *Burdine,* 450 U.S. at 253-54, 101 S.Ct. at 1094. Even so, the establishment of a prima facie case is not an ultimate finding of discriminatory intent. Rather, it simply raises a rebuttable presumption of discrimination, "because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949-50, 57 L.Ed.2d 957 (1978) (emphasis supplied).[33]

The Eleventh Circuit emphasized this point, and its linkage to the second step of the *McDonnell Douglas* analytical framework, in *Walker v. Mortham,* 158 F.3d 1177 (11th Cir. 1998).

---

[33] *See also* Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 n.7, 101 S.Ct. 1089, 1094 n.7, 67 L.Ed.2d 207 (1981), where the Court observed:

> The phrase "prima facie case" not only may denote the establishment of a legally mandatory, rebuttable presumption, but also may be used by courts to describe the plaintiff's burden of producing enough evidence to permit the trier of fact to infer the fact at issue. 9 J. Wigmore, Evidence § 2494 (3d ed. 1940). *McDonnell Douglas* should have made it apparent that in the Title VII context we use "prima facie case" in the former sense.

The Court's opinion in St. Mary's Honor Center v. Hicks, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), is to the same effect:

> To establish a "presumption" is to say that a finding of the predicate fact (here, the prima facie case) produces "a required conclusion in the absence of explanation" (here, the finding of unlawful discrimination). 1 D. Louisell & C. Mueller, *Federal Evidence* § 67, p. 536 (1977).

*Id.* at 506, 113 S.Ct. at 2747.

-20-

We note that the prima facie case establishes a presumption, and not an inference, of intentional discrimination. An inference is "[a] process of reasoning by which a fact or proposition sought to be established is deduced as a logical consequence from other facts, or a state of facts, already proved or admitted." *Black's Law Dictionary* 778 (6th ed. 1990). For instance, in a murder case, if the prosecution can establish that the victim was alive when the defendant entered his home, that the victim and the defendant were the only people in the house, that the defendant was carrying a pistol, that neighbors heard a gunshot while the defendant was in the victim's home, and that the victim was dead when the defendant left his home, then a jury could reasonably infer that the defendant murdered the victim, even though no one testified to seeing the murder take place. In contrast, in an employment discrimination case, if the plaintiff can establish the elements of the prima facie case — *e.g.*, that she is female, that she applied for a position with the defendant employer, that she was qualified for the position, and that the position was given to a male — it does not logically follow that the employer discriminated against the plaintiff on the basis of her sex. **The prima facie case, standing alone, puts the evidence in equipoise** — although one could reasonably conclude that the plaintiff was not hired because of her sex, one could just as reasonably conclude that the plaintiff was not hired because the employer did not like the suit she was wearing, or because the employer's son was also an applicant, or because another applicant agreed to work for half the posted salary, or any number of reasons other than sex discrimination. **A factfinder cannot infer intentional discrimination from the prima facie case.**

The prima facie case does, however, create a presumption of intentional discrimination. *See Burdine*, 450 U.S. at 254 & n.7, 101 S.Ct. at 1094 & n.7. A presumption is "an assumption of fact that the law requires to be made from another fact or group of facts found or otherwise established." *Black's Law Dictionary* 1185 (6th ed. 1990). A presumption does not follow

-21-

logically from the facts establishing the presumption, but (in the case of a non-conclusive presumption) acts as a procedural device to force the party against whom the presumption operates to come forward with rebuttal evidence. *See* Robert Belton, *Burdens of Pleading and Proof in Discrimination Cases: Toward a Theory of Procedural Justice*, 34 Vand. L. Rev. 1205, 1222 (1981). The presumption of intentional discrimination in employment discrimination cases forces the employer — who is in the best position among the parties to know why certain employment decisions were made — to present evidence regarding why the plaintiff was not given the desired position.

The importance of the inference/presumption distinction is in the burden placed on the defendant at the *McDonnell Douglas* rebuttal stage. If establishment of the prima facie case created an <u>inference</u> of intentional discrimination, the defendant's legitimate, non-discriminatory explanation would be an affirmative defense. *Cf. NLRB v. McClain of Ga., Inc.*, 138 F.3d 1418, 1424 (11th Cir. 1998) (holding in a National Labor Relations Act case that showing that an employee's involvement in union activity was a motivating factor in the discharge of that employee creates an inference of anti-union animus; the employer can then raise the claim that the employee would have been discharged even had he not engaged in union activity as an affirmative defense). The defendant would therefore carry the burden of <u>persuasion</u> in regard to that explanation. *See Mulhall v. Advance Security, Inc.*, 19 F.3d 586, 592 n.12 (11th Cir. 1994). Because establishment of the prima facie case creates only a <u>presumption</u> of intentional discrimination, however, the defendant carries only the burden of <u>production</u> in regard to his legitimate, non-discriminatory explanation. *See id.; see also* Fed.R.Evid. 301 (1998) (noting that presumptions create a burden of production on the party against whom the presumption is directed, but no a burden of persuasion); *Black's Law Dictionary* 1185 (6th ed. 1990) (same). The burden is then on the plaintiff to prove that the proffered explanation is pretextual.

-22-

In many cases, this will be a distinction without a difference. For instance, if the plaintiff establishes a prima facie case of intentional discrimination and the defendant fails to produce any evidence impeaching that prima facie case or rebutting it with a legitimate, non-discriminatory reason for the employment decision, then the plaintiff prevails as a matter of law — regardless of whether the prima facie case is classified as a "presumption" or an "inference." *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997), *cert. denied sub nom. Combs v. Meadowcraft Co.*, 522 U.S. 1045, 118 S.Ct. 685, 139 L.Ed.2d 632 (1998); *Thompkins v. Morris Brown College*, 752 F.2d 558, 562 (11th Cir. 1985). In such a case the defendant has met neither the burden of production nor the burden of persuasion. **There are, however, situations in which the distinction is important.** ...

*Walker*, 158 F.3d at 1183 n.10 (emphasis in original) (**boldface** emphasis added). This case presents a "situation[] in which the distinction is important."

### 3.   The effect of rebutting a prima facie showing

To rebut the presumption of intentional discrimination raised by a plaintiff's demonstration of a prima facie case, "the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the [contested employment decision]." *Burdine*, 450 U.S. at 255, 101 S.Ct. at 1094. "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted," *id.* at 255, 101 S.Ct. at 1094-95, and "drops from the case." *Id.* at 255 n.10, 101 S.Ct. at

1095 n.10; *accord*, *Hicks*, 509 U.S. at 507-08, 113 S.Ct. at 2747-48.
"A satisfactory explanation by the defendant destroys the legally
mandatory inference of discrimination arising from the plaintiff's
initial evidence." *Burdine*, 450 U.S. at 256 n.10, 101 S.Ct. at
1095 n.10.

## 4.    Plaintiff's proof of "pretext"

"The defendant's 'production' (whatever its persuasive effect)
having been made," *Hicks*, 509 U.S. at 511, 113 S.Ct. at 2749, "the
factual inquiry proceeds to a new level of specificity." *Burdine*,
450 U.S. at 255, 101 S.Ct. at 1095.  That phrase, "a new level of
specificity," refers to "the fact that the inquiry now turns from
the few generalized factors that establish a prima facie case to
the specific proofs and rebuttals of discriminatory motivation the
parties have introduced." *Hicks*, 509 U.S. at 516, 113 S.Ct. at
2752.  At this third level of analysis, the plaintiff must cast
doubt upon the credibility of the defendant's proffered
explanations for the contested employment decision, thereby raising
an issue of fact for determination by the jury: *i.e.*, whether the
stated reasons are but a pretext for discrimination.  In other
words, the plaintiff's burden is that of "cast[ing] sufficient
doubt on the defendant's proffered nondiscriminatory reasons to

-24-

permit a reasonable factfinder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct' ...." *Combs*, 106 F.3d at 1538 (quoting *Cooper-Houston v. Southern Railway Co.*, 37 F.3d 603, 605 (11th Cir. 1994)).

The plaintiff shoulders that burden by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs*, 106 F.3d at 1538 (quoting *Sheridan v. E.I. duPont de Nemours & Company*, 100 F.3d 1061, 1072 (3d Cir. 1996)) (internal quotation marks omitted). The *Combs* court further observed that "this circuit's post-*Hicks* decisions uniformly hold that once a plaintiff has established a prima facie case <u>and has put on sufficient evidence to allow a factfinder to disbelieve an employer's proffered explanation for its actions</u>, that alone is enough to preclude entry of [summary judgment or] judgment as a matter of law." *Id.* at 1532 (emphasis supplied).[34]

---

[34] *Combs* must now be read in light of the more recent decision of the Supreme Court in Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). *Reeves* makes it clear that, even when a plaintiff proffers sufficient evidence of pretext, there still may be some cases where a plaintiff's claim will not survive a defendant's motion for summary judgment under Rule 56, or motion for judgment as a matter of law under Rule 50.

  [A] plaintiff's prima facie case, combined with sufficient evidence
  to find that the employer's asserted justification is false, may
  permit the trier of fact to conclude that the employer unlawfully

## D.   **Summation**

The foregoing discussion leads this court to the conclusion

that, in almost every instance, more is required of a plaintiff to

survive a motion for summary judgment than simply proof a prima

---

discriminated.

> This is not to say that such a showing by the plaintiff will
> always be adequate to sustain a jury's finding of liability.
> Certainly there will be instances where, although the plaintiff has
> established a prima facie case and set forth sufficient evidence to
> reject the defendant's explanation, no rational factfinder could
> conclude that the action was discriminatory.   For instance, an
> employer would be entitled to judgment as a matter of law if the
> record conclusively revealed some other, nondiscriminatory reason
> for the employer's decision, or if the plaintiff created only a weak
> issue of fact as to whether the employer's reason was untrue and
> there was abundant and uncontroverted independent evidence that no
> discrimination had occurred.... Whether judgment as a matter of law
> is appropriate in any particular case will depend on a number of
> factors.   Those include the strength of the plaintiff's prima facie
> case, the probative value of the proof that the employer's
> explanation is false, and any other evidence that supports the
> employer's case and that properly may be considered on a motion for
> judgment as a matter of law....

*Id.* at 148, 120 S.Ct. at 2109.   *Reeves* addressed a Rule 50 motion for judgment
as a matter of law.  Even so, the "standard for granting summary judgment mirrors
the standard of judgment as a matter of law, such that the inquiry under each is
the same."   *Id.* at 150, 120 S.Ct. at 2110.   The Eleventh Circuit subsequently
acknowledged the import of the *Reeves* decision, and how it altered the holding
in *Combs.*

> The Supreme Court's decision in *Reeves* modifies part of our *Combs*
> decision.  We had stated in *Combs* that judgment as a matter of law
> was unavailable to an employer once a plaintiff offered sufficient
> evidence of pretext as to each of the proffered reasons.  Combs, 106
> F.3d at 1538.  ... *Reeves* tells us judgment as a matter of law will
> sometimes be available to an employer in such a case.  *Reeves,* 120
> S.Ct. at 2109.   And because the "standard for granting summary
> judgment mirrors the standard for granting judgment as a matter of
> law, such that the inquiry under each is the same," *id.* at 2110, the
> same is true of summary judgment.

Chapman v. AI Transport, 229 F.3d 1012, 1025 n.11 (11th Cir. 2000) (*en banc*).

facie case.

Of course, there may be cases in which the strength of the prima facie showing is so compelling that it, and it alone, is sufficient to carry the plaintiff to a jury. *See, e.g., Burdine*, 450 U.S. at 255 n.10, 101 S.Ct. at 1095 n.10; *Howard*, 32 F.3d at 526. This, however, is not such a case. First, general knowledge on the part of plaintiff's supervisors that he had previously filed complaints of discrimination "is not sufficient evidence of retaliation to counter substantial evidence of legitimate reasons for adverse personnel action against" plaintiff. *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994). *See also Morales v. Human Rights Division*, 878 F. Supp. 653, 659 (S.D.N.Y. 1995) (same). Similarly, the temporal proximity between plaintiff's protected activity and termination is not sufficiently compelling to cause a reasonable factfinder to conclude that the defendant's stated reasons for discharging plaintiff are not the true reasons for that action.

Several courts within the Eleventh Circuit have addressed the question of whether temporal proximity between protected conduct and a subsequent adverse employment action is, alone, sufficient to suggest that the employer's proffered explanation for the action is pretextual, and have concluded that it is not. *See Mandeville v.*

-27-

*City of Coral Gables*, 50 F. Supp. 2d 1320, 1333 (S.D. Fla. 1999) (holding that pretext was not established where plaintiff "merely [showed] that the adverse employment actions suffered by her came within reasonable temporal proximity to [the protected activity]"); *Wallace v. School Board of Orange County*, 41 F. Supp. 2d 1321, 1330 (M.D. Fla. 1998) (holding that "temporal proximity is not dispositive in proving pretext" in a Title VII retaliation case); *Wrenn v. Ledbetter*, 697 F. Supp. 483, 486 (N.D. Ga. 1988) (holding that plaintiff failed to establish pretext where the only evidence on the issue consisted of the chronology of the adverse employment action and plaintiff's protected activities), *aff'd*, 880 F.2d 420 (11th Cir. 1989), *cert. denied*, 493 U.S. 1075, 110 S.Ct. 1123, 107 L.Ed.2d 1030 (1990).

Many courts outside the Eleventh Circuit have reached the same conclusion. *See Bell v. Runyon*, 242 F.3d 373 (Table), No. 99-3967, 2000 WL 1705063, at *1 (8th Cir. Nov. 15, 2000) (a retaliation action brought by United States Postal employee, holding that plaintiff failed to establish pretext when he presented "no evidence, other than temporal proximity ... between protected activity and the adverse employment decision"); *Bourbon v. K-Mart Corp.*, 223 F.3d 469, 473 (7th Cir. 2000) (a retaliation action

premised upon Illinois anti-discrimination statutes, but utilizing the *McDonnell-Douglas* analytical framework, and holding that "temporal proximity alone is not enough to prove pretext"); *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1206 (10th Cir. 2000) (holding in a Title VII retaliation action, that "close temporal proximity [between protected activity and adverse employment action] suggests pretext, but is not sufficient by itself to raise an issue of fact"); *Barnett v. U.S. Air, Inc.*, 157 F.3d 744, 754 (9th Cir. 1998) (mere temporal proximity between adverse actions and protected activity is not enough to show pretext); *Prentice v. Information Resources, Inc.*, 139 F.3d 902 (Table), No. 97-2405, 1998 WL 67702, at *4 (7th Cir. Feb. 9, 1998) (holding that "the temporal proximity between [plaintiff's protected activity] and [his] suspension is enough to meet his prima facie case [of retaliation], [but] it is insufficient to establish pretext"); *Bartlik v. United States Department of Labor*, 73 F.3d 100, 103 n.7 (6th Cir. 1996) (temporal proximity between the alleged protected activity and the adverse employment action, by itself, is not always sufficient to prove retaliation); *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir. 1993) (finding temporal proximity between protected activity and the allegedly discriminatory policy

did not alone suffice to demonstrate policy was pretext for discrimination); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 343-344 (3d Cir. 1990) (holding that temporal proximity alone will not necessarily raise an inference of pretext); *Cruz v. McAllister Bros., Inc.*, 52 F. Supp. 2d 269, 287 (D.P.R. 1999) (holding that a two-day gap between plaintiff's request for an ADA accommodation and the employer's decision to place him on leave was insufficient to establish pretext); 1 Barbara Lindemann & Paul Grossman, *Employment Discrimination Law* 676-77 (3rd ed. 1996). ("[T]emporal proximity, without more, may be insufficient to raise a triable question.").

Accordingly, defendant's motion for summary judgment is due to be granted. An order consistent with this memorandum opinion shall be entered contemporaneously herewith.

DONE this 15th day of June, 2001.

United States District Judge

-30-